**Thomas J. PHIPPS, Appellant,**

v.

**The SCHOOL DISTRICT OF KANSAS CITY, Missouri, Respondent.**

**No. KCD 30208.**

Missouri Court of Appeals,
Western District.

Sept. 4, 1979.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 1, 1979.

Application to Transfer Denied Nov. 14, 1979.

Doyle R. Pryor, Jolley, Moran, Walsh, Hager & Gordon, Kansas City, for appellant.

Taylor Fields, North, Colbert & Fields, Kansas City, for respondent.

Before SHANGLER, P. J., WASSERSTROM, C. J., and CLARK, J.

WASSERSTROM, Chief Judge.

This case stems out of the 1977 Kansas City school strike, during which many of the school employees, including plaintiff Phipps, were terminated for strike activity. As part of the strike settlement, the parties agreed to reinstatement of most of the employees who had been terminated. The job offered to Phipps by way of reinstatement was unacceptable to him, and he pursued a grievance proceeding before the defendant School District. From an adverse ruling in the grievance proceeding, he sought review in the circuit court. The circuit court dismissed his petition, from which action Phipps pursues the present appeal.

Some of the basic facts appear in the Petition for Review filed by Phipps in the circuit court, and other of the facts appear in the School District's Motion to Dismiss and exhibits attached thereto. On April 25, 1977, Phipps' employment was terminated "for excessive absence." At that time he had the position of Custodian-Fireman. On May 9, 1977, pursuant to an order by Judge Clymer in the circuit court, the terminated employees including Phipps were reinstated. However, in *School District of Kansas City v. Clymer*, 554 S.W.2d 483 (Mo.App. 1977), this court held Judge Clymer exceeded his jurisdiction and prohibited enforcement of his order. Pursuant to that writ of prohibition, Phipps was again terminated effective July 8, 1977. It is of key impor-

tance for the purposes of this case to note that during the brief period that Phipps had been reinstated under Judge Clymer's order of May 9, 1977, he had been demoted from Custodian-Fireman to the lower classification of Custodian I.

The legal battle, however, had just begun. On July 13, 1977, the striking employees filed a class action lawsuit in the federal court under the Civil Rights Act. They complained that their civil rights had been violated in that their termination of employment was without just cause as required by certain published Board policies, and because further the School District had failed and refused to process this complaint as a grievance as required by other published Board policies and the requirements of constitutional due process.

On August 26, 1977, the School District and the Service School Employees Union, Local 12, entered into a Tentative Agreement, which provided in part for settlement as follows:

"1. All employees terminated effective April 25, 1977 and/or July 8, 1977 will be permitted to apply for reappointment to the positions from which they were terminated.

"2. [E]ach person who applies for reappointment by delivering to the District a completed form requesting reappointment shall be reappointed to a position with the same salary as that position held with the District on the date of termination. . . .

\*       \*       \*       \*       \*       \*

"7. The pending lawsuit (*Walker et al., v. Carpenter, et al.*) will be dismissed with prejudice . . . . .

"8. Except in the event of an alleged breach of this agreement by the School District, no further administrative, legal or equitable proceedings will be instituted or financed by Local 12 on behalf of these

employees terminated on April 25, and/or July 8, 1977 for reasons related to said terminations or relative to the job action against K. C. School District and arising during the period 3/20/77 through 7/8/77. All alleged breaches of this agreement will be processed through the agreed upon grievance procedures."

Thereafter Phipps did apply for reinstatement in compliance with the terms of the agreement, and he was offered reinstatement as Custodian I, the job he held on the date of the second separation effective July 8. Phipps refused that offer on the ground that he was entitled to reinstatement as Custodian-Fireman, the position he held on April 25, 1977, the date of original termination. In view of this disagreement, Phipps initiated grievance proceedings under Board Policy No. 6580, a hearing was held as provided under that policy, with an ultimate denial by the School District of Phipps' claim on January 13, 1978.[1]

While that grievance procedure was in progress, the School District and the Union were also moving toward a formal disposition of the federal court litigation. By consent of the parties, the federal court entered an order on January 18, 1978, that notice of the proposed settlement and dismissal of the class action be mailed to all members of the class, and such a notice was mailed to all of the affected employees, including Phipps, on January 23, 1978. That notice provided in part as follows:

"Walker and Caldwell have requested this Court to dismiss this action because Walker and Caldwell and the people they represent have either (1) had the opportunity to return to work at the School District and have not responded to that opportunity or (2) have in fact returned to the School District as full-time employees.

\*       \*       \*       \*       \*       \*

1. The record before this court does not reveal what issue or issues were argued in the grievance proceeding or what evidence was introduced. None of the arguments presented in the circuit court or here touch the substantive issue of which job it was to which Phipps was enti-

tled to reinstatement. The terms of the settlement agreement in this respect are ambiguous as they relate to Phipps' situation, and that ambiguity awaits to be adjudicated with the help of any appropriate evidence which may be available.

"If this action is dismissed by the Court as requested by plaintiffs and defendants, it may prevent you from making the same claims against these defendants in the future. If you do not believe that this case should be dismissed in a manner which might effect [sic] your ability to make these claims in the future, you should file a written statement with the Honorable Elmo Hunter, United States District Judge, 811 Grand Avenue, Kansas City, Missouri, with copies to Mr. Pryor and Mr. Bartlett at the addresses shown above, on or before January 30, 1978, setting forth in detail each reason why you object to this proposed settlement. If you do not file such a statement prior to January 30, 1978, the Court may dismiss this action as requested by both plaintiffs and defendants."

The present action was filed in the circuit court on February 10, 1978, and sought judicial review "of a final decision in a contested case" or alternatively for judicial review "in the nature of certiorari." The School District responded with a motion to dismiss for failure to state a claim upon which relief could be granted. That motion was sustained by the trial court.

That ruling by the trial court was not explained by any finding, conclusion or statement of reasons. However, the grounds for the motion as set forth therein and as argued by the School District in this court rest on the following theories: 1) that the dismissal with prejudice of the federal court action bars the present litigation under the principles of res judicata; and 2) that Phipps has not followed the proper procedure for a judicial review, in that (a) this is not a "contested case"; and (b) the requirements for reviewing an "uncontested case" have not been met. We have concluded that these objections are not sound and that the dismissal of this case by the trial court must be reversed.

## I.

### Res Judicata

Phipps' first rejoinder to the res judicata argument is that the School District did not lay any proper foundation for a ruling on that issue in that: (a) the motion to dismiss was not verified, it was not supported by any affidavit, and the purported federal court records attached as exhibits were not certified; and (b) the trial court did not purport to treat the motion to dismiss as a motion for summary judgment, as would be required under Rules 55.27(a) and 74.04 in order for the motion to dismiss to be given effect as a "speaking motion."

Phipps is technically correct, especially in regard to the first of the two contentions just mentioned. However, there is no dispute whatsoever as to what happened in the federal court. In the course of oral argument before this court, counsel for Phipps with commendable candor stated with respect to the federal court documents: "I don't dispute that they were authentic. . . . They are what they purport to be." We will treat that concession as a stipulation concerning the authenticity of the federal records in question. The failure of the trial court to formally treat the School Board's motion to dismiss as a motion for summary judgment under Rule 74.-04 is of little moment and will be disregarded.

■ The present proceeding cannot be deemed foreclosed by the federal litigation under the strict doctrine of res judicata. Under that doctrine, taken in its strict sense, a second suit becomes precluded only when it proceeds on the same cause of action as that of an earlier case which has already been adjudicated. *L_ v. R_,* 518 S.W.2d 113 (Mo.App.1974). The present situation is not of that character. The cause of action here differs sharply from that presented in the federal court. The federal court litigation sought to vindicate a federal right not to be discharged without a hearing on the issue of just case. The present cause involves a completely different question as to whether Phipps is entitled to be reinstated as a Custodian-Fireman rather than as a Custodian I.

■ Nor does the related doctrine of collateral estoppel apply. That doctrine comes

into play only when a party seeks to relitigate for a second time an issue which has already been decided in prior litigation between the same parties or their privies. There is no issue in the present case which was ever before the federal court. The issue here has to do with the proper interpretation of the settlement agreement which led to the consent disposition of the federal case. No problem concerning that settlement agreement was, nor in the nature of things could it have been, a subject of the pleadings in the federal case. Nor was this issue of interpretation presented to the federal court in any ancillary way.

What the School District seems to be really saying is that Phipps was invited in January 1978 by the notice of settlement to present his problem to the federal court, and that having been given that opportunity, he is now foreclosed from seeking a resolution of the issue anywhere else. That, however, is an unwarranted purpose and result to be attributed to the federal court notice. That notice simply told the affected employees that they should make any reasons known to the federal court "which might effect [sic] your ability to make these same claims in the future." Phipps was no longer making the same claim which had *led to* the federal court action. Instead, in January 1978 he was complaining about the manner in which the School District was purported to comply with the agreement which *disposed* of the federal action. With respect to the latter type of question, the settlement agreement contained its own explicit answer as to how the parties were to proceed and before whom. That procedure plainly stated was that "All alleged breaches of this agreement will be processed through the agreed upon grievance procedures."

The various authorities cited by the School District have all been examined and found to be inapplicable. So, for example, *Varnal v. Kansas City,* 481 S.W.2d 575 (Mo. App.1972), the case most heavily relied upon by the School District, involved a suit alleging harassment against the plaintiffs in connection with enforcement of the City Building Code. The plaintiffs had previously tried and lost a suit in the federal court brought under the federal Civil Rights Act in which they had alleged the very same acts of alleged harassment. In holding that the federal court judgment was res judicata, this court pointed out: "the two causes as pleaded are identical. There has been no showing of any variance between them in any respect." As has already been shown, that is not the situation here.

## II.

Phipps argues that he is entitled to judicial review of the grievance proceedings either on the ground that it is a "contested case" under Section 536.100 (all statutory references are to RSMo 1978) and Rule 100.-03; or else he is entitled to have it reviewed as an "uncontested case" under Section 536.150 and Rule 100.08. We have concluded that Phipps is incorrect as to the first of those contentions, but is correct as to the second.

A. *Contested Case.* The term "contested case" is defined by Section 536.010(2) and Rule 100.01(3) as follows: " 'Contested case' means a proceeding before an agency in which legal rights, duties and privileges of specific parties are required by law to be determined after hearing." Phipps says that the grievance procedure meets this definition because Board Policy No. 6580 does require hearings at various steps. The School District, on the other hand, argues that the requirement of a hearing under a Board Policy does not arise to such dignity as to meet the criterion of "required by law."

The parties here sharply debate the question of whether a hearing is "required by law" if the requirement is made by an administrative regulation as opposed to the requirement being imposed by statute. Much of this debate swirls around the illustrative listing contained in *State ex rel. Leggett v. Jensen,* 318 S.W.2d 353, 356 (Mo. banc 1958) where it is stated that the requirement of a hearing must be "by constitutional provision, statute, municipal charter provision or ordinance."

We will assume for the purpose of this case, without deciding, that a requirement for hearing by a regulation suffices to meet the definition "required by law." Even so, that assumption leads to still a further question as to whether Board Policy No. 6580 can even be considered a regulation. The policy declarations, of which No. 6580 is one, have an unusual genesis. Ordinarily grievance procedures are agreed to as a result of collective bargaining and appear in a labor agreement which culminates the bargaining process. However, that usual situation is not possible in dealings between a School District and a labor organization representing its employees because of the so-called "meet and confer" statute, Section 105.520. That section provides that whenever a union representing employees of a public body presents proposals, then the public body "shall meet, confer and discuss such proposals" and that upon completion of discussions, "the results shall be reduced to writing and be presented to the appropriate administrative, legislative or other governing body in the form of an ordinance, resolution, bill or other form required for adoption, modification or rejection."

It appears obvious that Policy No. 6580 was adopted under that statutory provision in a form deemed by the School District to be an action parallel and equivalent to an "ordinance." Thus Policy No. 6580 is the kind of public action which falls within the general concept set forth in *State ex rel. Leggett v. Jensen, supra,* which speaks of a hearing required by "constitutional provision, statute, municipal charter provision *or ordinance.*" (Emphasis added.)

The foregoing analysis however does not exhaust the question of whether the present grievance proceeding was "required by law." The term "grievance" covered by Policy No. 6580 is defined in Section 1–A as follows: "A 'grievance' is an alleged violation or misapplication of a Board policy included in the 'Handbook.'" Phipps does not claim that the dispute concerning whether he should be reinstated as a Custodian-Fireman or a Custodian I constitutes a violation of misapplication of anything in the Handbook, nor is any copy of or excerpt from the Handbook included in the record on appeal from which that matter could be determined independently. Rather than being a matter growing out of a violation of the Handbook, this particular grievance came through the grievance machinery because of paragraph 8 of the agreement which settled the federal litigation. In the factual context of this case, the hearing held during the course of the grievance procedure is more accurately characterized as being required by agreement of the parties rather than being required "by law." Therefore, there was no hearing required by law within the definition of Section 536.-010(2) and Rule 100.01(3).

B. *Uncontested Case.* Nevertheless, Phipps does have a right of review of the grievance decision as an "uncontested case." Although the School District's position was originally not entirely clear, the nature of its objection to review under Section 536.-150 and Rule 100.08 was clarified during the course of oral argument before this court. In the course of that oral argument, counsel for the School District made the straightforward statement that the grievance proceeding here is a noncontested administrative proceeding under the Administrative Procedures Act, Chapter 536.

The objections being pressed by the School District toward review here as an uncontested case stand on the following very narrow grounds: (a) the School District says that the allegation in the petition that review is being sought "in the nature of certiorari" is vague and confusing; (b) the School District further says that Phipps should have but did not comply with the procedural requirements of Rule 84.24.

As to the first of those two objections, it must be observed that the statute and rule provide that the review may be. by injunction, certiorari, mandamus, prohibition "or other appropriate action." Just what label is attached to the petition for review cannot be considered of any real significance. Phipps' petition for review stated with clarity that he was seeking judicial review of the result reached in the grievance proceed-

ing and that he was asking for relief either under the provisions relating to contested cases or alternatively under Section 536.150 and Rule 100.08 relating to uncontested cases. The School District's first objection is hypertechnical and is overruled.

As to the second objection, it suffices to say that Rule 84.24 applies only to proceedings for extraordinary writs in the Supreme Court or in the Court of Appeals. That rule has no application to judicial proceedings for review of administrative proceedings originating in the circuit court.

The judgment is reversed and the cause remanded for further proceedings.

All concur.