**NATIONAL COUNCIL ON COMPENSATION INSURANCE, Appellant,**

v.

**Jay ANGOFF, Director of Missouri Department of Insurance, Respondent.**

**No. WD 49720.**

Missouri Court of Appeals, Western District.

April 18, 1995.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 30, 1995.

Edward M. Vokoun, Evans & Dixon, St. Louis, for appellant.

Mark W. Stahlhuth, Mo. Dept. of Ins., Jefferson City, for respondent.

Before KENNEDY, P.J., and LOWENSTEIN and HANNA, JJ.

LOWENSTEIN, Judge.

This appeal concerns the setting of rates by the respondent, the Director of Insurance, Jay Angoff (Director), for the "residual market" of employer-policyholders of workers' compensation insurance. The appellant is the National Council of Compensation Insurance (NCCI), which is an organization of insurers writing workers' compensation insurance in Missouri and which is also the administrator of the residual market. Section 287.896, RSMo (Cum.Supp.1994), covers the residual market of employers who are defined in subsection 2 of the statute as "applicants who are in good faith entitled to but who are unable to procure such insurance through ordinary methods." Basically, this statute, adopted in 1993 to be operational starting January 1, 1994, sets up a procedure where the Director submits a plan for employers who have had trouble obtaining com-

pensation insurance, as opposed to those in the "voluntary market," those who have no trouble obtaining the insurance; to get guaranteed coverage from the plan administrator, NCCI. The statutory goal is to help deserving employers move into the voluntary market and obtain cheaper premium charges. NCCI, with Director approval, is to set the rates for both markets. NCCI submitted a rate request for a 20.1% increase to the Director for approval. The Director, after a public hearing in a non-contested case which falls under § 536.150, RSMo (Cum.Supp. 1994), *Benton–Hecht Moving & Storage, Inc. v. Larry C. Call,* 782 S.W.2d 668 (Mo.App. 1989), issued the now-contested order which granted no increase but, in the alternative, allowed appellant a 16.8% increase if NCCI adopted a plan changing the makeup of employers in the residual pool.

NCCI went to Cole County Circuit Court praying for extraordinary relief in mandamus compelling the Director to withdraw the order, or to immediately give vitality to the portion of the order granting the 16.8% increase. After giving preliminary relief to NCCI, the court then quashed the writ and dismissed NCCI's petition.

Section 287.896 sets up a mechanism for the funding, through equitable assessment by companies doing business in Missouri to get compensation insurance, at such rates that are not excessive, nor inadequate nor discriminatory, and are "actuarially sufficient to apply claims and losses and reasonable operating expenses of insurers." Also, and most significant in this case, the legislature set up authority for the Director to make sure the employers in this residual market were given the same help as those in the voluntary market, as to such matters as loss control, safety engineering, and claims handling.

The Director's order noted that many small employers which had excellent safety records were finding difficulty in getting insurance in the voluntary market which was forcing larger numbers of employers to seek insurance in the more expensive residual market. In 1992, 41% of all businesses were in the equivalent of the residual market, up from 32.9% in 1987. This situation caused the legislature to enact the statute in ques-

tion, and within the act, to order the Director to set up a plan by January, 1994, to reduce the numbers of employers within the residual market. Generally, the Director's plan would allow any employer meeting specific safety and loss control standards to qualify as a voluntary market member.

The ultimate implementation of the Director's plan was enjoined as a result of litigation brought by certain insurance groups writing workers' compensation insurance. It was the pendency of the litigation involving the plan to move larger numbers of employers from the residual to the voluntary market that caused the Director to issue the bifurcated or alternative order that the appellant attacks as being beyond the authority of the Director to issue. The order was tied to the outcome of the plan because if the plan was kept from being put in effect and the status quo prevailed, the evidence would not warrant the proposed NCCI increase above the present approved rate structure. But, alternatively, if the plan were implemented, the result would be movement of a large number of low risk employers out of the residual market, which would leave a smaller remaining pool of predominantly higher risk businesses.

■ The trial court's dismissal of NCCI's mandamus petition following an answer and dismissal on the merits vests this court with jurisdiction to decide the merits of the legality of the judgment. *State ex. rel. Schaefer v. Cleveland,* 847 S.W.2d 867, 870 (Mo.App. 1992). The NCCI appeal does not complain of the Director's result in granting no increase on its request, but focuses on the ability of the Director to give it an increase "made contingent upon future events."

■ Summarized, § 287.896 does these things in the following subsections: 1) forty-five days from August 28, 1993, the Director is to approve a plan for the residual market beginning the first of 1994 to guarantee coverage with loss prevention and control for employers now in the residual market; 2) Insurance companies are to apportion among them "applicants who are in good faith entitled to, but who are unable to procure insurance through ordinary methods." Rates are

to be approved by the Director for the residual market "so that the amount required in premiums, together with reasonable investment income earned ... are not excessive, inadequate or unfairly discriminatory, and are actuarially sufficient to apply claims and losses and reasonable operating expenses of the insurers. Deficits are to be apportioned among the voluntary carriers; 3) In passing on rate requests, the Director "shall have the same authority and follow the same procedures as in disapproving a rate filing ... in the voluntary market"; 4) The Director is to see that employers in the residual market receive the same service in such areas as safety and loss control as those in the voluntary bracket.

The Director's explanation before both the trial judge and this court is, with many employers being put in the residual market through no fault of their own, particularly not because of poor safety or claims records, there were actually some good risks in the residuary market only because an insurance company would not take them in the more favorable voluntary market. As such, the status quo, prior to submission of the plan was such that the existing schedule and premium income generated to the carriers was sufficient without granting an increase. But, if a large portion of those good risks, as per the intent of the legislative directive to the Director, were shifted to the voluntary market, then the remaining risks in the residual market would generate more claims and, based on the evidence at the hearing, would then justify the increase.

This court finds the Director's decision was not subject to relief through mandamus enforcement. The disallowance of an increase was based on evidence the Director could justly rely upon. The contingent allowance of 16.8% was also based on sufficient evidence. The Director is given due discretion in setting rates, and the fact that in this case he did not stop with a disallowance does not push him outside of his statutory duties and subject his action to an extraordinary remedy such as mandamus. *State ex. rel. Seidl v. Jefferson County Board of Education,* 548 S.W.2d 853, 856–57 (Mo.App.1977). NCCI cannot show a clear, unequivocal right to the relief, so they do not qualify for the extraordinary relief. *State ex. rel. Rock Road Frontage, Inc., v. Davis,* 444 S.W.2d 43, 46 (Mo.App.1969). It would seem somewhat unfair to sanction the Director for taking the extra step to allow NCCI relief, without the necessity of NCCI filing another request for an increase if the plan were put into effect. NCCI can make no showing that either the disallowance or the contingent increase deny it or its constituents adequate and actuarially sufficient rates. The circuit court was justified in determining this petition should be dismissed.

The Order is affirmed.

All concur.