

# SUPREME COURT OF MISSOURI

## en banc

| | | |
|---|---|---|
| STATE ex rel. JIM SWOBODA, | ) | *Opinion issued August 9, 2022* |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | No. SC99000 |
| | ) | |
| MISSOURI COMMISSION ON HUMAN RIGHTS, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| ALISA WARREN, | ) | |
| | ) | |
| Appellant, and | ) | |
| | ) | |
| ARMSTRONG TEASDALE, LLP, | ) | |
| | ) | |
| Appellant. | ) | |

## APPEAL FROM THE CIRCUIT COURT OF JACKSON COUNTY
### The Honorable Bryan E. Round, Judge

The Missouri Commission on Human Rights and its Executive Director, Alisa

Warren, (collectively, the "Commission"), and Armstrong Teasdale, LLP (the "Law

Firm") appeal the circuit court's judgment issuing a permanent writ of mandamus in Jim

Swoboda's favor. As relevant here, Swoboda filed a charge of discrimination with the

Commission against the Law Firm that was dismissed for lack of jurisdiction. After

Swoboda sought judicial review, the circuit court directed the Commission to rescind the dismissal, accept the charge, and conduct an investigation. Because Swoboda failed to establish he is entitled to mandamus relief, however, the circuit court's decision was erroneous. The judgment is reversed, and the case is remanded.

## Background

Swoboda filed a charge of discrimination against his employer, the Board of Police Commissioners of Kansas City (the "Board"), and the Law Firm in February 2019. The charge alleged that, in 2014, while Swoboda was a sergeant with the Kansas City Police Department, he opposed the purported discrimination against another officer and supported that individual in a formal legal claim against the Board. When Swoboda was deposed in the case, an attorney from the Law Firm, which represented the Board, allegedly informed him he should think about his career as he testified. Again, before Swoboda testified at trial, an attorney from the Law Firm again allegedly advised him to consider how his testimony could hurt the Board. After a mistrial, the other officer's claim was settled.

The charge indicated that, from October to December 2018, Swoboda took a leave of absence due to medication issues and stress related to involvement with the other officer's claim, stating he used 46 sick, vacation, and compensation days. Swoboda contended he received medical approval to return to full duty in December 2018 but was placed on limited duty until January 2019. He further posited that, during this period, he was 1) assigned menial tasks; 2) denied access to his vehicle, e-mail, and key card entry for certain facilities; 3) not allowed to wear his uniform or carry a gun; 4) restricted from

2

accessing computers, confidential information, and records, despite being the custodian of records; 5) excluded from Fraternal Order of Police meetings, Commander meetings, department training, the unit holiday party, and work groups, committees, and projects; and 6) removed from his positions of information management unit commander and Custodian of Records.[1]  He also purportedly lost his office and was assigned to work from a storage closet.  Swoboda believed all of these actions were taken against him in retaliation for participating in the discrimination case because, once the claim was settled, he regained access to his e-mail and restrictions on his key card entry were removed. Yet, at the time the charge was filed, his department vehicle had not been returned.

The charge named the Board as well as the Law Firm and listed retaliation, disability, and "[o]ther: [a]iding and [a]betting" as the types of discrimination.[2]  In March 2019, the Commission issued a letter regarding Swoboda's claims against the Law Firm:

> The investigation of the [] complaint has determined that the [Commission] lacks jurisdiction over this matter because there is no employer-employee relationship between [Swoboda] and [the Law Firm].  Therefore, [the Commission] is administratively closing this case and terminating all [] proceedings relating to your complaint.

Swoboda filed a petition for a writ of mandamus in the circuit court, seeking to require the Commission to vacate its dismissal and accept and investigate his claim.  The circuit court directed the Commission to respond to the petition.  The Law Firm filed a motion to intervene, which the court later sustained without objection.  The Commission and the

---

[1] The charge provided specific examples for some of these allegations.
[2] The Commission, in August 2019, issued a right-to-sue letter for the claims against the Board. Swoboda filed a corresponding action in October 2019.

Law Firm also filed motions to dismiss, alleging Swoboda failed to state a claim upon which relief could be granted. The circuit court entered an order, judgment, and permanent writ of mandamus, finding the Commission erroneously dismissed Swoboda's charge without issuing a right-to-sue letter and directing the Commission to rescind its dismissal, accept the charge, and conduct an investigation.[3] The Commission and the Law Firm appeal.[4]

**Standard of Review**

If a circuit court, pursuant to section 536.150,[5] grants relief from an administrative agency's decision, this Court reviews the ruling like any other court-tried case. *Furlong Cos., Inc. v. City of Kan. City*, 189 S.W.3d 157, 168 (Mo. banc 2006). The judgment will be affirmed unless it is not supported by substantial evidence, is against the weight of the evidence, erroneously declares the law, or erroneously applies the law. *Id.* Questions of law, including matters of statutory interpretation, are reviewed *de novo*. *State ex rel. Tivol Plaza, Inc. v. Mo. Comm'n on Hum. Rts.*, 527 S.W.3d 837, 841 (Mo. banc 2017) (expressing the rule in the context of reviewing the denial of a writ of mandamus).

**Analysis**

The Commission and the Law Firm, for distinct reasons, contend the circuit court erred in entering judgment in Swoboda's favor and issuing a permanent writ of

---

[3] Previously, the circuit court issued a similar order. After the Commission and the Law Firm appealed, the proceeding was dismissed for lack of a final, appealable judgment. The Commission subsequently asked the circuit court to denominate its prior order as a judgment.
[4] After an opinion by the court of appeals, this Court granted transfer. Mo. Const. art. V, sec. 10.
[5] All citations to section 536.150 are to RSMo 2016. All other statutory references are to RSMo Supp. 2018, unless otherwise specified.

4

mandamus because such relief was inappropriate here.[6]  The Commission posits the decision to administratively close a complaint for lack of jurisdiction is a discretionary action that cannot be controlled by mandamus, while the Law Firm alleges mandamus was improper because Swoboda was attempting to establish a new right rather than enforce an existing right.  This Court finds the Law Firm's argument dispositive.[7]

Regarding judicial review of administrative agency proceedings, article V, section 18 of the Missouri Constitution provides:

> All final decisions, findings, rules and orders on any administrative officer or body existing under the constitution or by law, which are judicial or quasi-judicial and affect private rights, shall be subject to direct review by the courts as provided by law; and such review shall include the determination whether the same are authorized by law, and in cases in which a hearing is required by law, whether the same are supported by competent and substantial evidence upon the whole record.  Unless otherwise provided by law, administrative decisions, findings, rules and orders subject to review under this section or which are otherwise subject to direct judicial review, shall be reviewed in such manner and by such court as the supreme court by rule shall direct and the court so designated shall, in addition to its other jurisdiction, have jurisdiction to hear and determine any such review proceeding.

Pursuant to this provision, reviewing courts, when a hearing is not held, are required to ascertain whether the decision of an administrative agency is authorized by law.  Notably,

---

[6] The Commission and the Law Firm also argue the circuit court's decision was improper because applicable statutes require an employment relationship for these claims.  They contend the charge, due to the absence of an employment relationship between Swoboda and the Law Firm, was properly dismissed.

[7] Accordingly, this Court does not decide whether 1) the Commission's decision to administratively close the complaint for lack of jurisdiction is subject to control by mandamus or 2) applicable statutes require an employment relationship to pursue the claims at issue.

article V, section 18, by dictating review is conducted "as provided by law," allows the legislature to create additional rules in this area.

The proceeding at issue constitutes a noncontested case, judicial review of which is governed by section 536.150. Subsection 1 of that statute provides the scope of review:

> When any administrative officer or body existing under the constitution or by statute or by municipal charter or ordinance shall have rendered a decision which is not subject to administrative review, determining the legal rights, duties or privileges of any person, including the denial or revocation of a license, and there is no other provision for judicial inquiry into or review of such decision, such decision may be reviewed by suit for injunction, certiorari, mandamus, prohibition or other appropriate action, and in any such review proceeding the court may determine the facts relevant to the question whether such person at the time of such decision was subject to such legal duty, or had such right, or was entitled to such privilege, and may hear such evidence on such question as may be properly adduced, and the court may determine whether such decision, in view of the facts as they appear to the court, is unconstitutional, unlawful, unreasonable, arbitrary, or capricious or involves an abuse of discretion[.]

In accordance with this provision, the administrative agency's decision may be reviewed by an action for an injunction, certiorari, mandamus, prohibition, or another appropriate suit. Regarding other possible proceedings, general petitions for review are often filed. *See, e.g.*, *Kinzenbaw v. Dir. of Revenue*, 62 S.W.3d 49, 51-53 (Mo. banc 2001); *Spurgeon v. Mo. Consol. Health Care Plan*, 481 S.W.3d 604, 606 (Mo. App. 2016); *Ard v. Shannon Cnty. Comm'n*, 424 S.W.3d 468, 474-75 (Mo. App. 2014). For some of the specified actions, the common law provides various rules. *See, e.g.*, *State ex rel. Off. of Pub. Couns. v. Pub. Serv. Comm'n of Mo.*, 236 S.W.3d 632, 635 (Mo. banc 2007) (discussing writs of mandamus); *Hansen v. State, Dep't of Soc. Servs., Fam. Support Div.*, 226

S.W.3d 137, 141 (Mo. banc 2007) (addressing writs of prohibition). Section 536.150.1 also includes several standards.

This case presents the following issue: When an individual seeks judicial review of a noncontested case by filing a petition for a writ of mandamus, must the party establish a clear, unequivocal, specific right to relief?[8] This Court determines such a showing is required. The dissenting opinion attacks this holding on various grounds. First, it suggests the scope of judicial review will fall below the constitutionally guaranteed standard. As explained above, article V, section 18 provides review proceedings "shall include the determination whether the [administrative agency's decision is] authorized by law." The dissenting opinion characterizes this requirement as a mandatory minimum scope of review that does not require legislation to become effective. *See Wood v. Wagner Elec. Corp.*, 197 S.W.2d 647, 649 (Mo. banc 1946). This Court's holding is consistent with this standard. Article V, section 18 provides review must be conducted "as provided by law" and does not state what must be established to obtain specific forms of relief. Instead, it explains how reviewing courts analyze the propriety of agency decisions. Of course, the standard remains relevant when individuals seek relief via a writ of mandamus because reviewing courts must apply both the requirement that an individual seeking recourse prove a clear, unequivocal, specific right and ascertain whether the agency's decision was authorized by law.

---

[8] The dissenting opinion questions the applicability of other requirements to obtain original writs, such as the principle that the availability of another adequate legal remedy precludes relief. Because Swoboda must establish a clear, unequivocal, specific right and his failure to do so is dispositive, this Court need not address the applicability of any other requirements.

7

As a general note, many of the cases the dissenting opinion cites address the propriety of applying common law requirements for writs of certiorari as opposed to referencing mandamus cases, which uniquely require one to prove a clear, unequivocal, specific right. Importantly, the rules governing common law certiorari severely limit the instances in which the writ may issue. *See State ex rel. Police Ret. Sys. of City of St. Louis v. Murphy*, 224 S.W.2d 68, 73 (Mo. banc 1949) ("[The writ's] chief purpose is to confine an inferior tribunal within jurisdictional limits."). Dissimilarly, the requirement that an individual seeking relief by mandamus must prove a clear, unequivocal, specific right does not restrict the permissible scope of inquiry in a similar manner. As a result, the value of the cases the dissenting opinion cites is diminished.

More specifically, the dissenting opinion relies on *Murphy* to argue common law writ requirements may violate the minimum standard imposed by the Missouri Constitution. In that case, the statute providing judicial review was available only through the common law writ of certiorari. *Id.* at 73. This Court, in addressing the validity of the provision, noted, "Common law certiorari does not bring the whole record, as that term is generally understood, to the reviewing court. Its chief purpose is to confine an inferior tribunal within jurisdictional limits." *Id. Murphy* held the statute's requirement was incompatible with the constitutional standard, as some cases may require evidence to be considered. *Id.* The mandamus requirement at issue here differs significantly from the common law writ of certiorari, which may only be utilized to impose jurisdictional limits. Because of this limited inquiry, reviewing courts, in certiorari cases, may not be able to engage in the analysis the constitution dictates (i.e.,

8

whether a decision was authorized by law).  In mandamus actions, however, reviewing courts must determine whether the respondent has shown a clear, unequivocal, specific right to the requested relief; they simply do so in the context of applicable rules.  For these reasons, this Court's holding today is consistent with article V, section 18.

Second, the dissenting opinion argues requiring one to prove a clear, unequivocal, specific right to relief in this context is inconsistent with section 536.150.1, which states reviewing courts may ascertain whether the administrative agency's decision "[was] unconstitutional, unlawful, unreasonable, arbitrary, or capricious or involve[d] an abuse of discretion."  When interpreting statutory language, this Court seeks to identify the legislature's intent by considering the plain meaning of statutory language.  *Holmes v. Steelman*, 624 S.W.3d 144, 149 (Mo. banc 2021).  As a matter of presumption, the legislature 1) is aware of existing law when passing a statute, *State ex rel. Nothum v. Walsh*, 380 S.W.3d 557, 567 (Mo. banc 2012); 2) intend all words used to have meaning, *State ex rel. Goldsworthy v. Kanatzar*, 543 S.W.3d 582, 585 (Mo. banc 2018); and 3) does not include unnecessary or superfluous language.  *Alberici Constructors, Inc. v. Dir. of Revenue*, 452 S.W.3d 632, 638 (Mo. banc 2015).

Regarding section 536.150.1, the legislature presumptively knew the existing law surrounding the listed actions and intended for all language to have meaning.  In this context, requiring individuals seeking mandamus relief, in accordance with the common law, to prove a clear, unequivocal, specific right to obtain recourse, is consistent with the above provision.  While applying that requirement, of course, the reviewing court must determine whether the agency's decision "[was] unconstitutional, unlawful,

9

unreasonable, arbitrary, or capricious or involve[d] an abuse of discretion." The dissenting opinion contends the standards listed in section 536.150.1 should apply to all actions seeking judicial review of noncontested cases without the necessity of following the common law rule, regardless of the named relief. Yet such an interpretation fails to give effect to all of the statutory language and renders a portion of the statute—the list of actions—meaningless. To achieve the result advocated by the dissenting opinion, the legislature, rather than stating "such decision may be reviewed by suit for injunction, certiorari, mandamus, prohibition or other appropriate action," would have simply provided "such decision may be reviewed by an action in which the court. . ." followed by a description of what the proceedings entail.

The interpretation adopted by this opinion is consistent with precedent as well. This Court has "noted . . . the intent of the [statute] was that the several types of action specified therein were to be made more flexible and adaptable so as to [mold] them to fit the needs of those aggrieved by non-contested administrative decisions . . . ." *State ex rel. State Tax Comm'n v. Walsh*, 315 S.W.2d 830, 835 (Mo. banc 1958). In continuation, it explained that result was achieved "*by making provision for taking evidence*, and thus *permit[ting] the court to determine for itself the facts relevant to the question at issue*." *Id.* (emphasis added). Contrary to the dissenting opinion's suggestion, *Walsh* does not undermine this opinion. That case determined the listed actions, via the provision that the reviewing court could now take evidence and determine facts, became more flexible. The holding, of course, is sensible, as the statutory provision applies when the administrative body did not hold formal proceedings and there is no record for review.

10

*Furlong*, 189 S.W.3d at 165. *Walsh* focused on a reviewing court's ability to receive evidence and find facts. It did not find the statute usurped all applicable common law rules or standards of proof. This Court's decision, which does not impact the ability to receive evidence or find facts, is consistent with *Walsh*.[9]

More recently, this Court has discussed judicial review of noncontested cases. *See Lampley v. Mo. Comm'n on Hum. Rts.*, 570 S.W.3d 16, 20-22 (Mo. banc 2019).

---

[9] The dissenting opinion relies on *State ex rel. Leggett v. Jensen*, 318 S.W.2d 353 (Mo. banc 1958). There, this Court noted that, if a record was not created below, "the remedies of certiorari, mandamus, etc., are frequently inadequate, because of the inability of the court to consider the facts bearing on the merits of the agency's decision, because no record of evidence has been made for the court to review." *Id.* at 356 (internal quotation omitted). It explained the statute corrected the shortcoming by "giv[ing] the court power to hear evidence on the merits of the . . . case before the agency, so that it can determine in the light of the facts as they appear to the court whether the agency's decision is proper." *Id.* at 357 (internal quotation omitted). *Leggett*, much like *Walsh*, focused primarily on a reviewing court's ability to receive evidence and find facts. This Court's opinion does not speak to those practices; as explained above, the propriety of the agency's decision must be analyzed.

The dissenting opinion also notes writ actions seeking review of administrative proceedings levied under section 536.150.1 are distinct from common law writ proceedings. *See, e.g.*, *State ex rel. Wilson Chevrolet, Inc. v. Wilson*, 332 S.W.2d 867, 872 (Mo. 1960); *Bates v. City of St. Louis*, 728 S.W.2d 232, 234 (Mo. App. 1987). It relies on *State ex rel. Schneider v. Stewart*, 575 S.W.2d 904 (Mo. App. 1978). In that case, the appellate court outlined the limitations of the common law writ of certiorari and explained:

> The function of this statutory writ, however, is not confined to questions of jurisdiction or errors on the face of the record not otherwise reached by appeal, but allows for evidence and determinations of fact towards adjudication of whether the administrative decision "in view of the facts as they appear to the court, is unconstitutional, unlawful, unreasonable, arbitrary, or capricious or involves an abuse of discretion." In short, [the statute] constitutes the certiorari court with the function of an administrative tribunal in a contested case which hears evidence, makes a record and enters a decision on the facts found[,] a role extraneous to the common law writ of certiorari.

*Id.* at 908 n.2 (citations omitted). Under the type of adjudication *Schneider* describes, the actions at issue continue to differ from common law writ actions. Reviewing courts are able to receive evidence, find facts, and consider the issues listed in section 536.150.1, regardless of prior common law requirements. As such, the authority the dissenting opinion cites does not undermine this Court's holding.

11

There, Lampley and a co-worker, Frost, filed discrimination charges . *Id.* at 19. After opening investigations, the Commission determined Lampley advanced a claim of discrimination based on sexual orientation and Frost's claim was based on an association with someone who is gay. *Id.* at 20. The Commission found these claims were not covered by applicable statutes and administratively closed the proceedings. *Id.* Lampley and Frost, through petitions for administrative review or for a writ of mandamus, asked the circuit court to require the Commission to issue right-to-sue letters. *Id.* The circuit court granted summary judgment in the Commission's favor, finding Lampley's and Frost's claims were not cognizable. *Id.* On appeal, this Court held the Commission improperly determined the claims at issue were based on sexual orientation discrimination, finding, instead, that Lampley and Frost asserted they were discriminated against because they failed to conform to typical sexual stereotypes. *Id.* at 23. It reversed the lower judgment, remanded the case, and directed the circuit court to order the Commission to issue right-to-sue letters. *Id.* at 26.

Admittedly, this Court did not reference mandamus standards other than procedural rules regarding issuance of a preliminary writ, *see id.* at 20-26, and stated:

> The circuit court does not review the record for competent and substantial evidence, but instead conducts a *de novo* review in which it hears evidence on the merits, makes a record, determines the facts and decides whether the agency's decision is unconstitutional, unlawful, unreasonable, arbitrary, capricious or otherwise involves an abuse of discretion.

*Id.* (quoting *City of Valley Park v. Armstrong*, 273 S.W.3d 504, 508 (Mo. banc 2009)). While separate opinions directly discussed standards of review for noncontested cases, *see id.* at 27 n.2 (Wilson, J., concurring) (stating statutory rules apply regardless of the

12

review sought); *Id.* at 38 n.8 (Powell, J., dissenting) (indicating mandamus standards govern), the principal opinion is less clear. Rather than directly determining a clear, unequivocal, specific right need not be established, it 1) held one was not limited to seeking review by a writ of mandamus; 2) acknowledged the case's unique procedural posture; and 3) indicated that, despite procedural issues, it was exercising its discretion to permit the case to move forward, in part, because "[n]one of the parties nor the circuit court objected to or questioned the procedure" and "the participants . . . believed they were acting properly." *Id.* at 20-22.

In light of these circumstances, the present case is distinguishable, as the parties vigorously contest whether substantive mandamus rules apply. And because *Lampley* focused largely on other issues and did not clearly hold the common law mandamus requirement was inapplicable, it does not definitively address the issue at bar, despite the dissenting opinion's contrary assertions.[10]

Additionally, this Court has referenced mandamus standards when individuals seek such relief to review noncontested cases. *See, e.g.*, *State ex rel. Robison v. Lindley-Myers*, 551 S.W.3d 468, 472-74 (Mo. banc 2018); *Furlong*, 189 S.W.3d at 165-66. These matters were decided after *Walsh* and were not overruled by *Lampley*, further

---

[10] The dissenting opinion cites various cases that do not reference or apply common law mandamus standards in this context. *See State, ex rel. Martin-Erb v. Mo. Comm'n on Hum. Rts.*, 77 S.W.3d 600, 608 (Mo. banc 2002); *Van Kirk v. Bd. of Police Comm'rs of Kan. City*, 586 S.W.2d 350, 353 (Mo. banc 1979); *State ex rel. Union Elec. Co. v. Goldberg*, 578 S.W.2d 921, 922 n.1, 924 (Mo. banc 1979). These cases do not directly state individuals seeking relief are not required to establish a clear, unequivocal, specific right or indicate the parties disputed that requirement. *Martin-Erb*, 77 S.W.3d at 607-609; *Van Kirk*, 586 S.W.2d at 353-54; *Goldberg*, 578 S.W.2d at 923-24. They are distinguishable, failing to explicitly resolve the issue presented here.

13

establishing the Court's approach today is consistent with those opinions. For these reasons, the selection of a mandamus action for review is meaningful because the individual seeking relief will be required to prove a clear, unequivocal, specific right to relief.[11]

The dissenting opinion's contention that this Court's opinion runs contrary to law establishing the label ascribed to an action for review is insignificant is specious. First, although Swoboda's action for review was labeled as seeking mandamus relief, his petition and suggestions in support stated the Commission violated the standards listed in section 536.150.1. Yet the petition also indicated Swoboda was asserting a "clear, unequivocal, specific right." Later, the Commission and the Law Firm filed motions to dismiss, both of which, for various reasons, contended a writ of mandamus would not lie because relevant requirements could not be satisfied. In suggestions in opposition to both motions, Swoboda did not argue those principles were inapplicable or advance a different standard. Instead, he seemingly abided by the rules for mandamus actions and focused on the merits of his claim. On appeal to this Court, the Commission and the Law Firm strenuously argued a writ of mandamus was not appropriate. Again, Swoboda, rather than clearly disputing the applicability of the standards, simply contented he could meet

---

[11] The dissenting opinion argues this Court fails to provide the additional protection intended to result from the enactment of section 536.150 and erects unnecessary barriers to judicial review of noncontested cases. More robust protections, however, are available. For example, a reviewing court receives evidence, finds facts, and considers the issues listed in section 536.150.1, regardless of prior common law requirements. General actions for review under section 536.150.1, like those referenced elsewhere in this opinion, are now available as well. Moreover, this Court does not attempt to erect barriers to judicial review of noncontested cases or treat litigants unfairly. Instead, it merely operates within the framework provided by the applicable statute.

them. These actions are far more significant than a label; the proceedings, in essence, revolved around Swoboda's entitlement to mandamus relief under common law rules.

Second, the cases cited by the dissenting opinion are distinguishable. In each case, the individual seeking relief filed a general action. *See Hagely v. Bd. of Educ. of Webster Groves Sch. Dist.*, 841 S.W.2d 663, 670 (Mo. banc 1992) (failing to characterize the suit as a listed action); *Morrell v. Harris*, 418 S.W.2d 20, 21 (Mo. 1967) (addressing a petition for review of an agency's decision); *Phipps v. Sch. Dist. of Kan. City*, 588 S.W.2d 128, 129 (Mo. App. 1979) (same). Despite a lack of specificity, the petitions were sufficient to obtain review. *See Hagely*, 841 S.W.2d at 670; *Morrell*, 418 S.W.2d at 22; *Phipps*, 588 S.W.2d at 133-34. This action differs significantly because Swoboda, throughout the proceedings, has consistently maintained this suit as one for mandamus relief. He filed a petition for a writ of mandamus, cited the standard at issue, and subsequently—before the circuit court and this Court—accepted the application of mandamus rules.

To obtain a writ of mandamus, one must establish "a clear, unequivocal, specific right to a thing claimed." *Furlong*, 189 S.W.3d at 166. "The right . . . must be clearly established and presently existing[,]" and "the purpose of the writ is to execute, not adjudicate." *State ex rel. Chassaing v. Mummert*, 887 S.W.2d 573, 576 (Mo. banc 1994). Mandamus proceedings cannot create or clarify the existence of a right; instead, mandamus relief is appropriate to enforce only a previously delineated right. *Id.*

In some circumstances, statutes may create a right enforceable by mandamus. *See State ex rel. Hodges v. Asel*, 460 S.W.3d 926, 927 (Mo. banc 2015); *State ex rel. Hewitt*

15

*v. Kerr*, 461 S.W.3d 798, 805 (Mo. banc 2015). In others, however, statutes may not provide a sufficient basis for mandamus relief. *See Chassaing*, 887 S.W.2d at 576-77.

In *Chassaing*, this Court analyzed whether a writ of mandamus would issue to allow certain discovery in a statutory contempt action. *Id.* at 575-76. The provision at issue allowed an agency to ask a circuit court to institute contempt cases and provided guidance regarding additional proceedings. *Id.* at 577-78. It did not mention discovery. *Id.* This Court found a writ of mandamus was inappropriate, stating, "The question of whether discovery is available in [these proceedings] has not previously been decided by a Missouri court." *Id.* at 576-77. It held Chassaing inappropriately sought to "establish a right through a writ of mandamus, rather than to enforce a clearly established and presently existing right." *Id.* at 577; *see also ACLU of Mo. v. Ashcroft*, 577 S.W.3d 881, 898 (Mo. App. 2019) (stating "We therefore question the availability of mandamus in this case of first impression, as before any remedy could be imposed, it was first necessary to adjudicate the extent of the secretary of state's authority to review a sample sheet for sufficiency as to form pursuant to [the applicable statute]."). When a right does not clearly flow from a statute and clarification is required, mandamus relief is inappropriate.[12]

---

[12] At oral argument, Swoboda relied on *Lampley* in asserting statutes create rights enforceable by mandamus. That case is distinguishable from the present action. In *Lampley*, as explained above, this Court acknowledged the unique procedural posture and exercised its discretion to permit the case to move forward, in part, because the procedure was not disputed. 570 S.W.3d at 22. Moreover, although the right recognized—the ability to advance a discrimination claim based on sex stereotyping—was not explicitly discussed by the statute at issue, *see id.* (citing section 213.055.1(1)(a), RSMo 2000), this Court resolved the matter by looking to federal caselaw and state regulations elucidating the right. *Id.* at 24-26.

16

Because Swoboda sought a writ of mandamus, he must prove a clear, unequivocal, specific right to proceed with his claims under the Missouri Human Rights Act (the "Act").[13]  Without a prior or present employment relationship with the Law Firm, he seeks to advance a claim against it as an employer.  Yet, as explained below, he has not shown relevant statutes clearly allow him to pursue such a claim, particularly in light of the General Assembly's 2017 amendments to the Act (the "2017 Amendments").[14]

---

[13] The dissenting opinion unpersuasively argues this requirement can be avoided if Swoboda's petition is treated as one for a writ of prohibition rather than mandamus.  Initially, the dissenting opinion relies on cases involving original writ proceedings, *see State ex rel. Beutler, Inc. v. Midkiff*, 621 S.W.3d 491, 492 (Mo. banc 2021); *Chassaing*, 887 S.W.2d at 575; *State ex rel. Haley v. Groose*, 873 S.W.2d 221, 222 (Mo. banc 1994), not the appeal of a circuit court's review of an administrative agency's decision.  The ability to select and provide a different form of relief than that granted by the circuit court is questionable, and the cited authority fails to establish this Court can do so.

In any event, the cases are distinguishable on other grounds.  In *Chassaing*, the individual sought both a writ of prohibition and a writ of mandamus.  887 S.W.2d at 575.  While this Court, at first, issued a writ of mandamus, both types of recourse were originally at issue.  *Id.*  The opinion also noted the opposing party would not suffer prejudice, even if the petition for a writ of mandamus, as a matter of discretion, was treated as a writ of prohibition.  *Id.*  The case at bar, however, has never involved a writ of prohibition.  Further, the Commission and Law Firm would likely be prejudiced by an exercise of discretion.  They both advance arguments centered on mandamus standards, and Swoboda has not seriously disputed their application.  In other matters in which this Court has exercised its discretion, another remedy was clearly appropriate to provide relief for the alleged harm.  *See Midkiff*, 621 S.W.3d at 492-93 (noting a petition for a writ of mandamus was filed but indicating a prior case stated prohibition would lie); *Haley*, 873 S.W.2d at 222-23 (explaining habeas corpus was inappropriate, but a writ of mandamus could issue).  The concern here, though, is that Swoboda cannot meet the requisite requirement to obtain mandamus relief.  His petition for a writ of mandamus should not be treated as one for a writ of prohibition.

[14] Swoboda suggests the true concern is his right to a right-to-sue letter under section 213.111.1.  At oral argument, he reiterated that contention and questioned why determining whether a claim is cognizable under the Act is a question of jurisdiction.  These concerns are misplaced.  Section 213.075.1 states, "The commission shall make a determination as to its jurisdiction with respect to all complaints[,]" and 8 C.S.R. 60-2.025(7)(B)3 provides the executive director or a designee may, at any time prior to the setting of a public hearing, administratively close a complaint "[f]or lack of jurisdiction[.]"  Jurisdiction, as relevant to administrative agencies, does not mean subject matter jurisdiction, which is constitutionally granted only to courts; instead, the term refers to statutory authority to take certain actions.  *Cass Cnty. v. Dir. of Revenue*, 550 S.W.3d 70, 74

The following provisions of the Act are relevant to Swoboda's claim:

1. It shall be an unlawful discriminatory practice for an employer, employment agency, labor organization, or place of public accommodation:

   (1) To aid, abet, incite, compel, or coerce the commission of acts prohibited under this chapter or to attempt to do so;

   (2) To retaliate or discriminate in any manner against any other person because such person has opposed any practice prohibited by this chapter or because such person has filed a complaint, testified, assisted, or participated in any manner in any investigation, proceeding or hearing conducted pursuant to this chapter[.]

   . . . .

2. This chapter, in addition to chapter 285 and chapter 287, shall provide the exclusive remedy for any and all claims for injury or damages arising out of an employment relationship.

Section 213.070. "Employer" is defined as

a person engaged in an industry affecting commerce who has six or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and shall include the state, or any political or civil subdivision thereof, or any person employing six or more persons within the state but does not include corporations and associations owned or operated by religious or sectarian organizations.

Section 213.010(8).

---

(Mo. banc 2018). This Court has implicitly recognized that, if a claim is not cognizable under the Act, the Commission lacks power to investigate the claim. *Cf. Lampley*, 570 S.W.3d at 25-26 (holding, because the Act prohibited the conduct at issue, the Commission had statutory authority to investigate the claims). Consequently, the relevant issue is whether the Act allows section 213.070.1 claims absent an employment relationship, which is a question of first impression.

First, the 2017 Amendments included language regarding an employment relationship when it adopted section 213.070.2. *Compare* section 213.070.2 (stating "This chapter, in addition to chapter 285 and chapter, shall provide the exclusive remedy for any and all claims for injury or damages *arising out of an employment relationship*." (emphasis added)), *with* section 213.070, RSMo 2016 (lacking any language regarding an "employment relationship"). Therefore, although the Act does not expressly state an employment relationship is required, the 2017 Amendments bring into question the possibility of such a concept or requirement.

Second, the 2017 Amendments added language to section 213.070 regarding employers and employment agencies. *Compare* section 213.070.1 ("It shall be an unlawful discriminatory practice for an employer, employment agency, labor organization, or place of public accommodation . . .), *with* section 213.070, RSMo 2016 ("It shall be an unlawful discriminatory practice . . ."). This qualifying language pertaining to employers could be read to reduce the scope of section 213.070.

Finally, the 2017 Amendments altered the definition of "employer." *Compare* section 213.010(7), RSMo 2016 ("'Employer' includes . . . any person directly acting in the interest of an employer . . . ."), *with* section 213.010(8) (removing such language and adding other qualifications as to what constitutes an "employer" for purposes of the Act). In light of the 2017 Amendments, Swoboda's right to assert a claim under section 213.070.1 does not clearly flow from the Act.

Moreover, the decisional law upon which Swoboda relies does not provide assistance. Swoboda asserts *Keeney v. Hereford Concrete Products, Inc.*, 911 S.W.2d

19

622 (Mo. banc 1995), establishes he has a clear, specific, unequivocal right to relief in this case. *Keeney*, however, is distinguishable from the present action. In that case, Keeney filed an action alleging Hereford Concrete Products, his prior employer, engaged in retaliation by terminating his severance payments. *Id.* at 623. The circuit court denied the claim, finding Keeney and Hereford did not have an employer-employee relationship at the time of the alleged retaliation. *Id.* at 623-24. On appeal, this Court found the language of section 213.070, RSMo 1994, which "render[ed] retaliation 'in any manner against any other person' an unlawful discriminatory practice[,]" was broad as well as clear and unambiguous. *Id.* at 624. It ultimately determined that provision "d[id] not limit itself to the employer-employee relationship[,]" reversed the circuit court's judgment, and remanded the case. *Id.* at 625-26.

First, *Keeney* did not decide whether one can advance a claim absent a past or present employment relationship, stating this Court "need not explore the outer boundaries of section 213.070[, RSMo 1994,] in this case. Where, as here, the alleged victim of retaliation is a former employee of the company charged with committing a retaliatory act, the claim promotes the Act's purpose of prohibiting discrimination or retaliation in employment." *Id.* at 625. Here, Swoboda never had an employment relationship of any kind with the Law Firm.

Second, the statutes referenced in *Keeney* were altered by the 2017 Amendments. *Compare* sections 213.070 and 213.010(8), *with* sections 213.070 and 213.010(6), RSMo 1994. As explained above, the changes may impact whether an employment relationship is required for claims brought pursuant to section 213.070.1. And—even though the "in

20

any manner against any other person" language utilized in *Keeney* remains unchanged, *compare* section 213.070.1(2), *with* section 213.070(2), RSMo 1994—alterations to other provisions may be significant. *See Goldsworthy*, 543 S.W.3d at 585 ("The plain and ordinary meaning of the words in a statute is determined from the words' usage in the context of the entire statute."). *Keeney* does not establish Swoboda has a clear, specific, unequivocal right to assert a claim against the Law Firm absent an employment relationship.[15]

Mandamus proceedings may be used to enforce a clear, specific, unequivocal right that is presently existing. They cannot be utilized to adjudicate whether an individual is afforded a right but, rather, can compel performance of a right only that has already been established. Here, the ability to pursue a claim under section 213.070.1, absent an employer-employee relationship, does not plainly follow from relevant statutory provisions. Swoboda does not cite any prior Missouri decisional law that has interpreted section 213.070 to not require an employment relationship, nor does he produce any other authority demonstrating he can pursue his claim. Rather than seeking to enforce a previously delineated right, Swoboda attempted to adjudicate whether, under applicable statutes, his claim was permissible. The issuance of mandamus relief was foreclosed in

---

[15] Swoboda also cites *King v. Chrysler Corp.*, 812 F. Supp. 151 (E.D. Mo. 1993), and notes federal discrimination decisional law, if it is consistent with Missouri law, may guide state courts when interpreting state law. *See Lampley*, 570 S.W.3d at 22. He alleges *King* is consistent with Missouri law because section 213.070.1 and the applicable provision of Title VII did not specify an employment relationship is required. *King*, however, is unhelpful in light of the 2017 Amendments. The relevant provision of Title VII did not contain language similar to the current section 213.070.2, *see* 42 U.S.C. § 2000e-2 (1988), and, unlike the current version of section 213.010(8), the definition of "employer" included "any agent of [an employer]." *See King*, 812 F. Supp. at 153 (citing 42 U.S.C. § 2000e(b) (1988)).

21

this case in which an issue of first impression is presented. The circuit court's decision to grant relief was in error.

## Conclusion

The judgment is reversed, and the case is remanded.

_____
Mary R. Russell, Judge

Powell, Fischer and Ransom, JJ., concur;
Wilson, C.J., dissents in separate opinion filed;
Breckenridge and Draper, JJ.,
concur in separate opinion of Wilson, C.J.



## SUPREME COURT OF MISSOURI
### en banc

STATE ex rel. JIM SWOBODA,     )
                               )
         Respondent,        )
                               )
v.                                )      No. SC99000
                               )
MISSOURI COMMISSION ON      )
HUMAN RIGHTS,           )
                               )
         Appellant,         )
                               )
ALISA WARREN,           )
                               )
         Appellant, and   )
                               )
ARMSTRONG TEASDALE, LLP,   )
                               )
         Appellant.        )

### DISSENTING OPINION

In Missouri, judicial review of administrative decisions is a matter of constitutional significance. This constitutional imperative to protect individuals from errant administrative decisions stands side by side with many of the most cherished and zealously defended rights recognized in our jurisprudence. Article V, section 18 of the Missouri Constitution charges the legislature, primarily, and this Court, secondarily, with the responsibility for establishing the manner and means of vindicating this right. The

legislature has done its part, enacting sections 536.100[1] and 536.150 and related provisions, but this Court increasingly is failing to uphold its constitutional obligation to do the same. Relying on inapplicable precedent and ignoring the plain language of article V, section 18 and section 536.150, the principal opinion in this case significantly changes the law and weakens this constitutional and statutory right to judicial review of administrative decisions in noncontested cases. Future litigants will have to guess their way through a seemingly endless procedural shell-game in hopes of securing the judicial review of administrative decisions to which they are entitled. Faithful interpretation of the constitution and defense of the right it guarantees demands more. Accordingly, I respectfully dissent.

## Standard of Review

In reviewing a noncontested agency decision pursuant to section 536.150.1, a reviewing court affirms the circuit court's judgment determining whether the agency decision is "unconstitutional, unlawful, unreasonable, arbitrary, or capricious or involves an abuse of discretion," section 536.150.1, "unless there is no substantial evidence to support [the circuit court's judgment], unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law," *Furlong Cos., Inc. v. City of Kan. City*, 189 S.W.3d 157, 168 (Mo. banc 2006). Questions of law, including matters of statutory interpretation, are reviewed *de novo*. *State ex rel. Tivol*

---

[1] Unless otherwise stated, all statutory references are to RSMo 2016.

2

*Plaza, Inc. v. Mo. Comm'n on Hum. Rts.*, 527 S.W.3d 837, 841 (Mo. banc 2017)

(expressing the rule in the context of reviewing the denial of a writ of mandamus).

### I. Swoboda Properly Invoked Judicial Review Under Section 536.150 and Is Entitled to All the Review That Statute Provides

When the people of Missouri ratified a new constitution in 1945, they included a

section requiring judicial review of administrative decisions, now found in article V,

section 18. It provides:

> All final decisions, findings, rules and orders on any administrative officer or body existing under the constitution or by law, which are judicial or quasi-judicial and affect private rights, ***shall be subject to direct review by the courts as provided by law***; ***and such review shall include the determination whether the same are authorized by law***, and in cases in which a hearing is required by law, whether the same are supported by competent and substantial evidence upon the whole record. Unless otherwise provided by law, administrative decisions, findings, rules and orders subject to review under this section or which are otherwise subject to direct judicial review, shall be reviewed in such manner and by such court as the supreme court by rule shall direct and the court so designated shall, in addition to its other jurisdiction, have jurisdiction to hear and determine any such review proceeding.

Mo. Const. art. V, § 18 (emphasis added).

Interpreting article V, section 18, this Court held the provision that "administrative

decisions 'shall be subject to direct review by the courts as provided by law' refers to the

method of review to be provided (certiorari, appeal, etc.)." *Wood v. Wagner Elec. Corp.*,

197 S.W.2d 647, 674 (Mo. banc 1946). The *scope* of review – whether the decision is

authorized by law and, in contested cases, whether it is supported by competent and

substantial evidence upon the whole record – applies regardless of the *method* of review

provided. *Id.* Nevertheless, the constitution guarantees the minimum scope of review

3

(i.e., whether the decision is authorized by law and, in contested cases, whether it is supported by competent and substantial evidence upon the whole record), and this constitutional minimum "is mandatory and requires no legislation to put it into effect." *Id.* Jim Swoboda seeks to have this Court review the Commission's decision to see if its conclusion that it lacked jurisdiction over his claim was authorized by law. As explained below, if this Court granted the review to which he is entitled, the answer would be a resounding "no."

In *State ex rel. Police Retirement System of City of St. Louis v. Murphy*, 224 S.W.2d 68, 73 (Mo. banc 1949), a statute provided for judicial review of decisions of the board of trustees of the police retirement system "by the common law writ of certiorari, only." Under the common law, certiorari relief is available only "to confine an inferior tribunal within jurisdictional limits." *Id.* This Court, therefore, held it was not bound by that common law restriction because doing so was "repugnant" to the minimum scope of review article V, section 18 requires.[2] *Id.* This is significant in that, in one of the very first cases decided under this new constitutional provision, this Court refused to allow common law restrictions that usually attend extraordinary writs (i.e., the method of review) to frustrate the scope of review guaranteed by the constitution. Here, however, the principal opinion uses the same sort of common law restriction regarding the writ of mandamus to frustrate Swoboda's right to review.

---

[2]  At the time of this Court's decision in *Murphy*, the minimum scope of review referenced above was found in article V, section 22.

4

Of course, the right to judicial review of administrative decisions does not rest on the constitution alone. The first sentence of article V, section 18 authorizes the General Assembly to enact laws vindicating the right the constitution sought to protect and it quickly did so. In 1945, the General Assembly enacted section 536.100, providing the mechanism for judicial review in "contested cases," but it did not enact a procedure for review of all other forms of administrative decisions. *State ex rel. State Tax Comm'n v. Walsh*, 315 S.W.2d 830, 834 (Mo. banc 1958). As a result, for a brief period of time after the constitutional provision was approved, the only review of administrative decisions not covered by section 536.100 was by resort to extraordinary writs of mandamus, prohibition, certiorari, and the like.

Against the backdrop of *Murphy* (i.e., that common law writ restrictions cannot deprive relators of the scope of judicial review protected in article V, section 18), the General Assembly enacted in 1953 what is now section 536.150. This statute provides both the method and the scope of the judicial review guaranteed by article V, section 18 for all those administrative decisions not covered by section 536.100. It states:

> When any administrative officer or body existing under the constitution or by statute or by municipal charter or ordinance shall have rendered a decision which is not subject to administrative review, determining the legal rights, duties or privileges of any person, including the denial or revocation of a license, and there is no other provision for judicial inquiry into or review of such decision, such decision may be reviewed by suit for injunction, certiorari, mandamus, prohibition or other appropriate action, and ***in any such review proceeding the court may determine the facts*** relevant to the question whether such person at the time of such decision was subject to such legal duty, or had such right, or was entitled to such privilege, and may hear such evidence on such question as may be properly adduced, ***and the court may determine whether such decision, in view of the facts as they appear to the court, is [1] unconstitutional, [2] unlawful,***

5

***[3] unreasonable, [4] arbitrary, or [5] capricious or [6] involves an abuse of discretion***; and the court shall render judgment accordingly, and may order the administrative officer or body to take such further action as it may be proper to require; but the court shall not substitute its discretion for discretion legally vested in such administrative officer or body, and in cases where the granting or withholding of a privilege is committed by law to the sole discretion of such administrative officer or body, such discretion lawfully exercised shall not be disturbed.

§ 536.150.1 (emphasis added).

Shortly after section 536.150 was enacted, this Court stressed – much as it had in *Murphy* – that the new section 536.150 was intended to circumvent the common law restrictions associated with the conventional forms of the extraordinary writs of mandamus, prohibition, certiorari and the like to ensure the constitutional right of judicial review of administrative decisions was protected.

It is particularly to be noted that the the [sic] ***intent of the bill was that the several types of action specified therein were to be made more flexible and adaptable*** so as to mould [sic] them to fit the needs of those aggrieved by non-contested administrative decisions by making provision for taking evidence, and thus permit the court to determine for itself the facts relevant to the question at issue – a sort of statutory certiorari, for instance.

*Walsh*, 315 S.W.2d at 835 (emphasis added).

*Walsh* looked to the language of 536.150, which provides that – regardless of the method used to invoke judicial review – the circuit may make factual determinations in the first instance and then "determine whether [the agency] decision, in view of the facts as they appear to the court, is unconstitutional, unlawful, unreasonable, arbitrary, or capricious or involves an abuse of discretion."[3] Based on this language, *Walsh* properly

---

[3]  The principal opinion argues this interpretation is incorrect because it renders the list of common law remedies superfluous. But, as *Walsh* explains, the General Assembly was not

concludes that common law restrictions on the writs listed in section 536.150 cannot be applied when those writs are used to invoke judicial review under that statute if doing so denies the petitioner access to the six-factor judicial review that section 536.150 promises. *Walsh*, 315 S.W.2d at 835 (holding section 536.150.1 was intended to make "the several types of action specified therein," which includes mandamus, "more flexible and adaptable so as to mould [sic] them to fit the needs of those aggrieved by non-contested administrative decisions.").

The Court again articulated this point in *State ex rel. Leggett v. Jensen*, 318 S.W.2d 353, 356-57 (Mo. banc 1958):

> There are numerous cases, however, where agencies may act without having a hearing or making a record of evidence heard. In those cases the remedies of certiorari, ***mandamus***, etc., are frequently inadequate, because of the inability of the court to consider the facts bearing on the merits of the agency's decision, because no record of evidence has been made for the court to review.
>
> This bill is designed to correct this situation. It provides for the making in court, in a certiorari proceeding, for example, of the same kind of record that would be made before the agency in a case reviewable under Section [18] of Article V of the Constitution. In other words it gives the court

creating new causes of action or new forms of relief when it enacted section 536.150. Rather, the General Assembly took existing common law writs used to review administrative decisions in noncontested cases and made the scope of review (both factual and legal) under those writs uniform, providing a minimum amount of review regardless of the remedy sought. The principal opinion's interpretation, on the other hand, renders the promise of the full six-factor judicial review promised by section 536.150.1 illusory because it holds those six standards can be considered only if there is no common law restriction on whatever writ the party seeking judicial review chooses. But this means a party can never obtain the maximum amount of judicial review provided in section 536.150 because all of the listed writs carry some sort of threshold common law restriction. Moving forward, perhaps parties seeking judicial review will fare better simply by identifying the petition as one seeking judicial review under section 536.150 rather than identifying any of the listed writs or, alternatively, by invoking each and every one of the listed writs in their petitions. It should be noted, however, that nothing in the principal opinion gives any assurance either of these approaches will work.

7

> power to hear evidence on the merits of the plaintiff's case before the agency, ***so that it can determine*** in the light of the facts as they appear to the court ***whether the agency's decision is proper***.

*Id.* (emphasis added) (internal quotation marks omitted).

This idea that actions filed for the purpose of invoking judicial review under section 536.150.1 – however styled – are different from the traditional form of the writs listed in that statute is nothing new. Examples beyond *Walsh* and *Murphy* abound. Even though the writ of certiorari historically was treated as "a pristine common law action," Missouri courts have held that a petition for certiorari that invoked judicial review under section 536.150.1 was something altogether different, calling it a "statutory certiorari" that served merely as "a method for judicial review of an administrative determination." *State ex rel. Schneider v. Stewart*, 575 S.W.2d 904, 909 (Mo. App. 1978); *see also State ex rel. Wilson Chevrolet, Inc. v. Wilson*, 332 S.W.2d 867, 872 (Mo. 1960) (referring to the methods of review provided in section 536.150 as "*statutory actions*" (emphasis added)); *Bates v. City of St. Louis*, 728 S.W.2d 232, 234 (Mo. App. 1987) (characterizing the plaintiff's petition as "a § 536.150, RSMo 1978 petition for writ of certiorari" and referring to certiorari under section 536.150 as "statutory certiorari"). In opining about whether the relators in *Schneider* sought the common law or the statutory writ, the court of appeals explored the differences between the two actions:

> The relators assert under a common law writ of certiorari. The writ issues to confine an inferior tribunal within the limits of a proper jurisdiction and to relieve a party from injury where there appears, as a matter of law from the record, that the inferior tribunal lacked, abused or was in excess of jurisdiction in the proceedings. *State ex rel. St. Louis Union Trust Co. v. Neaf*, 346 Mo. 86, 139 S.W.2d 958, 963 et seq. (11-18) (1940). The writ takes the record as it comes and does not take account of the evidence

8

which relates to the merits only. *State ex rel. Evans v. Broaddus*, 245 Mo. 123, 149 S.W. 473, 476(3) (banc 1912).

The Administrative Procedure and Review Act (Chapter 536), § 536.150 (present Rule 100.08), on the other hand, accords judicial review by original writ of certiorari of an administrative decision not subject to administrative review (noncontested cases) where the administrative decision determines the legal right, duty or privilege of any person. The function of this ***statutory writ, however, is not confined to questions of jurisdiction or errors on the face of the record*** not otherwise reached by appeal (*Iba v. Mosman*, 231 Mo. 474, 133 S.W. 38, 41 (banc 1910); *Neaf*, supra, n.2, 139 S.W.2d l.c. 963), ***but allows for evidence and determinations of fact towards adjudication of whether the administrative decision "in view of the facts as they appear to the court, is unconstitutional, unlawful, unreasonable, arbitrary, or capricious or involves an abuse of discretion."*** In short, [§] 536.150 constitutes the certiorari court with the function of an administrative tribunal in a contested case which hears evidence, makes a record and enters a decision on the facts found (*State ex rel. Walmar Investment Company v. Mueller*, 512 S.W.2d 180, 182(1) (Mo.App.1974)) ***a role extraneous to the common law writ of certiorari.*** *State ex rel. Police Retirement System of City of St. Louis v. Murphy*, 359 Mo. 854, 224 S.W.2d 68, 73(10-12) (banc 1949).

*Schneider*, 575 S.W.2d at 908 n.2 (emphasis added).

This simple and obvious construction of section 536.150 applies just as well when

a petition for writ of mandamus is used to invoke the judicial review promised by

section 536.150.1. In *State ex rel. Union Electric Co. v. Goldberg*, 578 S.W.2d 921, 922

(Mo. banc 1979), the Court reviewed a mandamus suit brought "pursuant to [§] 536.150

to review the Director of Revenue's denial of appellants' claim for a sales tax refund."

(Footnote omitted). The circuit court determined Union Electric's sale of electricity to

Meramec Mining was not exempt from sale tax under section 144.030.3(11), RSMo

1969. *Id.* This Court reversed, finding the circuit court "erroneously applied the law"

and, in doing so, it did not apply the common law restrictions for a writ of mandamus that

9

apply in other circumstances.  *Id.* at 924.  Instead, it noted: "Section 536.150 RSMo

Supp. 1975 provides for review by injunction or original writ of administrative decisions

not otherwise subject to judicial review."  *Id.* at 922 n.1.

Similarly, in *Van Kirk v. Board of Police Commissioners of Kansas City*, 586

S.W.2d 350, 351-52 (Mo. banc 1979), which involved a petition for a writ of mandamus

seeking review of an agency decision, the Court did not cite, analyze, or apply any

common law restrictions that apply to mandamus in other contexts and, instead, affirmed

the circuit court's judgment determining the agency's discretion "was lawfully

exercised."  *Id.* at 353.  In *State ex rel. Martin-Erb v. Missouri Commission on Human

Rights*, 77 S.W.3d 600, 608 (Mo. banc 2002), this Court held mandamus was available

under section 536.150 "to determine whether the executive director's actions were [in

fact] accomplished under prescribed procedures and were lawful[.]"  (First alteration in

original) (internal quotation omitted).  The lawfulness of the agency decision, of course,

is one of the determinations a circuit court is authorized to make in a suit for mandamus

under section 536.150 and one of the forms of judicial review guaranteed by article V,

section 18.  *Martin-Erb* does not cite or analyze the common law restriction that a relator

must demonstrate, as a threshold matter, a clear, unequivocal right to the thing claimed,

and the Court did not require the relator to do so.

In *Furlong*, the circuit court granted mandamus after determining the agency

decision was "unlawful, unreasonable, arbitrary, and capricious," and this Court reviewed

the circuit court's determination under the *Murphy* standard.

> The trial court found that the city's decision was "unlawful, unreasonable, arbitrary, and capricious in that the [city] failed to perform its ministerial duty, given that this court finds that [Furlong] met the subdivision regulations and the preliminary plat is consistent with the zoning ordinance." The standard of review for a bench-tried case is well-established. An appellate court must sustain the decree or judgment of the trial court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law.

*Furlong*, 189 S.W.3d at 168. This Court then affirmed the circuit court's decision to grant mandamus, holding: "There was substantial evidence for the trial court to find that the city's decision to deny approval of Furlong's preliminary plat was unlawful, unreasonable, arbitrary, and capricious." *Id.* at 169. Even though *Furlong* recites the common law threshold restriction of clearly existing right to a ministerial duty as a prerequisite to judicial review under section 536.150, it was the only decision since the statute was enacted in 1953 to do so, and the authority cited comes from outside the context of a petition seeking judicial review under section 536.150.1. *Furlong* does not analyze this threshold common law restriction nor require the relator to meet it.

The only decision since section 536.150 was enacted in 1953 to actually apply the threshold common law restriction that courts must not engage in the judicial review promised by that statute unless and until the relator shows the existence of a clear and unequivocal right to the relief sought is *State ex rel. Robison v. Lindley-Myers*, 551 S.W.3d 468, 473 (Mo. banc 2018). But *Robison* does not state it was changing the law or abandoning 60 years of precedent. In fact, *Robison* does not even acknowledge any of the conflicting cases decided in the decades since section 536.150 was enacted. The only authority *Robison* cited for the new course it took is *Furlong*, which, as previously noted,

11

neither analyzes nor enforces this restriction in the context of section 536.150 and, instead, affirms the circuit court's grant of mandamus because "there was substantial evidence for the trial court to find that the city's decision to deny approval of Furlong's preliminary plat was **_unlawful, unreasonable, arbitrary, and capricious_**." *Furlong*, 189 S.W.3d at 169 (emphasis added).

*Robison* is an outlier.[4] It is based on no legitimate precedent, and it has never been followed. When this Court next reviewed a circuit court's judgment in a suit for mandamus seeking judicial review under section 536.150.1, this Court immediately returned to its prior approach of not allowing common law threshold restrictions for the writs listed in section 536.150 to frustrate the judicial review that statute plainly makes available. *See Lampley v. Mo. Comm'n on Hum. Rts.*, 570 S.W.3d 16, 20-21 (Mo. banc 2019).

Like in the present case, the petitioner in *Lampley* filed a petition for mandamus seeking judicial review of the Missouri Commission on Human Rights' ("MCHR") dismissal of his claim for lack of jurisdiction. *Id.* at 20. There was no discussion that

---

[4]   The court of appeals, too, failed in rare cases to follow article V, section 18's mandate that agency decisions be subject to judicial review for whether they are "authorized by law" and refused to apply the six-factor judicial review in section 536.150. *See Pub. Sch. Ret. Sys. of Sch. Dist. of Kan. City v. Mo. Comm'n on Hum. Rts.*, 188 S.W.3d 35, 42 (Mo. App. 2006) (providing judicial review under section 536.150 is not available in the absence of proof of a clear, unequivocal right to relief); *Nat'l Council on Comp. Ins. v. Angoff*, 903 S.W.2d 546, 548 (Mo. App. 1995) (same); *State ex rel. Keeven v. City of Hazelwood*, 585 S.W.2d 557, 559 (Mo. App. 1979) (same). In each of these cases, however, the court of appeals relied on decisions applying this common law threshold restriction outside the context of a suit for judicial review under section 536.150.1. In doing so, these cases failed to follow this Court's decisions granting relief under section 536.150.1 when an agency decision "is unconstitutional, unlawful, unreasonable, arbitrary, or capricious or involves an abuse of discretion."

12

judicial review under section 536.150 was contingent on the common law threshold restriction that the petition had to show a clear and unequivocal right to the relief sought – at least not in the principal or concurring opinion.  The only place that restriction appears is in the dissenting opinion.  A majority of this Court in *Lampley* rejected the dissenting opinion's position and held, instead, that "section 536.150 governs the standard of judicial review of noncontested cases." *Id.*  This Court further explained:

> The circuit court does not review the record for competent and substantial evidence, but instead conducts a *de novo* review in which it hears evidence on the merits, makes a record, determines the facts ***and decides whether the agency's decision is unconstitutional, unlawful, unreasonable, arbitrary, capricious or otherwise involves an abuse of discretion.***

*Id.* at 21 (emphasis added) (quoting *City of Valley Park v. Armstrong*, 273 S.W.3d 504, 508 (Mo. banc 2009)).  This holding vindicated the principle that, "[n]o matter how the judicial review is sought, … the standard governing whether the party seeking judicial review should be given relief is that set forth in section 536.150 (i.e., 'whether such decision … is unconstitutional, unlawful, unreasonable, arbitrary or capricious or involves an abuse of discretion'), not the standard governing petitions for writs of mandamus generally." *Id.* at 27 n.2 (Wilson, J., concurring) (alteration in original).

The dissenting opinion in *Lampley* vehemently disagreed with the Court and the concurring opinion on this point, claiming "[n]othing in § 536.150 purports to change the substantive nature of mandamus; it merely provides mandamus is one of several options to obtain noncontested case review." *Id.* at 38 n.8 (Powell, J., dissenting).  But those arguments ***failed***. *Id.* at 37-40.  The principal opinion refused to import judicial restrictions on the writ of mandamus developed in other contexts to deprive Lampley of

13

the judicial review guaranteed by the constitution and expressly provided for in section 536.150. Had it done so, Lampley would not have been granted relief and the dissenting opinion would not have been necessary.

Rather than follow *Lampley* and all the prior cases that placed substance over form, the principal opinion in this case now attempts to rewrite history by suggesting this Court in *Lampley* actually did apply (*sub silentio*) the traditional mandamus standards that the dissenting opinion there berated the Court for not applying. The principal opinion here appears to conclude that this Court in *Lampley* found the employee had a "clearly established" right to invoke the Missouri Human Rights Act ("MHRA") even though the right was no more clearly established there than it is here.[5] Of course, this Court in *Lampley* did not specifically reference mandamus standards (other than procedural rules regarding issuance of a preliminary writ) or conduct any detailed analysis under ordinary mandamus principles. Nevertheless, the principal opinion in this case suggests this Court in *Lampley* silently concluded the employee had a clearly established right to proceed under the MHRA in that case. That is a tough case to make.

First, the principal opinion in this case is forced to concede that this "clearly established" right in *Lampley* was not found in the statute because "the right recognized –

---

[5]  As addressed in section II, *infra*, Swoboda did show a clear and unequivocal right to have the MCHR "promptly investigate" his charge, even though he did not have to do so. That right is found in section 213.075.3, and the MCHR's clear and unequivocal duty to issue a "right to sue letter" if requested once 180 days have passed is found in section 213.111. That the MCHR ignored the plain language of the statute in dismissing Swoboda's charge does not render his petition for judicial review inadequate. Instead, it renders the MCHR's decision one that was not "authorized by law" and subject to judicial review and correction under both article V, section 18 and section 536.150.

14

the ability to advance a discrimination claim based on sex stereotyping – was not explicitly discussed by the statute at issue in *Lampley*." *Slip op.* at 17 n.12. And, it is forced to concede Lampley's "clearly established" right was not found in this Court's precedents because, at the time *Lampley* was decided, no prior Missouri court decision had taken the "opportunity to address a sex discrimination claim based upon sexual stereotyping until now." *Lampley*, 570 S.W.3d at 25. Instead, the principal opinion in this case suggests this Court based its holding in *Lampley* that the employee had a "clearly established" right to proceed under the MHRA – never mentioned let alone discussed in that opinion – on guidance from "federal caselaw and state regulations[.]" *Slip. op.* at 17 n.12. This is not credible. Had this Court in *Lampley* felt it needed to determine whether the employee had a clearly established right to proceed under the MHRA – which the vigorous dissenting opinion in that case plainly shows was not at issue – this Court certainly would not and could not have found this "clearly established" right in federal cases construing a different statute or state regulations that cannot enlarge or restrict the scope of a state law. Instead, it referred to those sources in the course of construing the statute to determine if the administrative decision was correct, as section 536.150 requires, not as part of any analysis determining whether some threshold restriction relating to writs of mandamus that applies in contexts other than under section 536.150.

In this case, Swoboda reasonably sought the judicial review set forth in section 536.150 by filing a petition for writ of mandamus, one of the mechanisms for triggering that review set out in that statute. He did so based on what this Court said in *Lampley*.

The principal opinion refuses to grant Swoboda the judicial review to which he is entitled because he failed to satisfy the threshold test for writs of mandamus, i.e., that he has a "clearly established" right to the relief he seeks.[6] In effect, this punishes Swoboda for following what *Lampley* **said** based solely on a revisionist characterization of what the principal opinion now claims *Lampley* **meant** but plainly did not say.[7] Not only is this grotesquely unfair, it is a dereliction of this Court's duty to ensure the availability of the independent judicial review of administrative decisions set forth in section 536.150 and guaranteed in article V, section 18 of the Missouri Constitution.

---

[6] The Court is so determined not to grant Swoboda the judicial review to which he is entitled under article V, section 18 and section 536.150, it overlooks clear precedent that would have rectified whatever shortcomings the principal opinion believes Swoboda's pleadings have. Because the principal opinion concludes Swoboda cannot seek judicial review under the six standards set out in section 536.150 because he initiated this case with a petition for writ of mandamus and cannot meet the threshold mandamus test by showing a "clearly established" right to relief, there is ample precedent for this Court to treat his petition for writ of mandamus as a petition for writ of prohibition. *See, e.g.*, *State ex rel. Chassaing v. Mummert*, 887 S.W.2d 573, 577 (Mo. banc 1994) (holding "[i]t is within this Court's discretion to treat relator's petition for writ of mandamus as one for a writ of prohibition"); *see also State ex rel. Beutler, Inc. v. Midkiff*, 621 S.W.3d 491, 493 (Mo. banc 2021) (same); *State ex rel. Haley v. Groose*, 873 S.W.2d 221, 223 (Mo. banc 1994) (treating a petition for writ of habeas corpus as a petition for writ of mandamus). Prohibition has no "clearly established" threshold test, so one would assume that – had Swoboda titled his petition seeking judicial review under section 536.150, or had the principal opinion simply been willing to treat his petition as one for prohibition – he would have sailed cleanly through to a discussion of whether the MCHR's decision violated one of the six standards of judicial review set out in section 536.150.

[7] And there is no reason to expect that this is the end of the barriers courts will erect to preclude review under section 536.150. Outside the context of section 536.150, none of the extraordinary writs named in that statute will issue if there is an adequate legal remedy. If we are to blindly apply these traditional restrictions as the principal opinion does in this case, then the fact that section 536.150 itself is an "adequate legal remedy" will preclude issuing any of the named writs. *See Schneider*, 575 S.W.2d at 908 (stating "the remedy by [section] 536.150 of the Administrative Procedure and Review Act precludes access to common law certiorari which does not issue in the presence of other adequate remedy") (internal citation omitted). What then are aggrieved parties to do?

16

The plain text of article V, section 18, the plain text of section 536.150, and the

historical understanding of both evidenced by this Court are clear. The right to judicial

review of administrative decisions in "noncontested cases" that is guaranteed by the

constitution and enshrined in section 536.150 does not – and cannot – turn on various

common law restrictions (created in other contexts) pertaining to the writs named in that

statute. No matter what the aggrieved party calls the pleading, so long as that pleading

invokes section 536.150, the party is entitled to the judicial review the constitution

guarantees and that statute ensures.[8]

Swoboda filed a petition for mandamus in the circuit court under section

536.150.1, seeking judicial review of the MCHR's decision dismissing his claim for lack

of jurisdiction. He asserts this administrative decision was "unconstitutional, unlawful,

---

[8]  When the stakes are this high, and the legislative intent so clear, Missouri courts have long recognized the label given to any petition seeking review under section 536.150 cannot – and should not – be given dispositive effect. *See, e.g.*, *Hagely v. Bd. of Educ. of Webster Groves Sch. Dist.*, 841 S.W.2d 663, 670 (Mo. banc 1992) (forgiving petitioner's failure to explicitly characterize his petition as one of the actions allowed under section 536.150 because "[j]ust what label is attached to the petition for review cannot be considered of any real significance"); *Morrell v. Harris*, 418 S.W.2d 20, 22 (Mo. 1967) (stating, "of course, misconceiving the precisely applicable remedy should not be fatal"); *Phipps v. Sch. Dist. of Kan. City*, 588 S.W.2d 128, 133-34 (Mo. App. 1979) (characterizing the argument that petitioner did not properly choose one of the available remedies under section 536.150 as "hypertechnical" when the petitioner was clear he sought review under section 536.150). By failing to follow these cases, the principal opinion consigns aggrieved parties to a no-win guessing game as to what arcane form of pleading will trigger the review section 536.150 was meant to ensure. In reaching this unfortunate conclusion, the principal opinion somehow concludes section 536.150 provides the same degree of judicial review – no more and no less – than if the people had never approved article V, section 18, and the General Assembly had never enacted that statute. Missing from its analysis is any sense that the people meant the constitutional change to have an impact and the General Assembly meant not only to protect the right newly preserved in the constitution but also to extend that right of judicial review even further. *See Leggett*, 318 S.W.2d at 358 (explaining that judicial review under section 536.150 "is broader in scope than that required by the constitutional provision … for cases in which a hearing is required by law in the agency, being in effect a hearing de novo").

17

unreasonable, arbitrary, capricious and/or involved an abuse of discretion" because it allegedly "contravenes Missouri law and the MCHR's custom, conduct, practices and/or procedures," and requesting that the circuit court order the MCHR to rescind its decision to dismiss his charge, accept it, and promptly investigate it. Because Swoboda properly invoked judicial review under section 536.150.1, he is entitled to all the review that statute (and the constitutional guarantee it was meant to protect) provides.

## II. The MCHR Had Jurisdiction over Swoboda's Claims and He Is Entitled to Relief

Because Swoboda properly invoked judicial review under section 536.150, he is entitled to all of the review that statute (and the constitutional guarantee it was meant to protect) provides. He claims the MCHR's decision to dismiss his claim because it lacked jurisdiction was not "authorized by law," the standard expressed in article V, section 18, and was both "unlawful" and an "abuse of discretion," two of the six standards set out in section 536.150. He is correct, and the circuit court was correct in granting him relief.

Employees seeking to bring suit against an employer under the MHRA must first assert their claim before the MCHR.[9] *Igoe v. Dep't of Lab. & Indus. Relations of Mo.*, 152 S.W.3d 284, 287 (Mo. banc 2005) (citing § 213.111). Section 213.075 authorizes (and even requires) the MCHR to dismiss any such claim if, on its face, it fails to invoke

---

[9] This procedure is *sui generis*. Claims are not filed with the MCHR so it can adjudicate the matter between the employee and employer (subject to judicial review) as is the case in most administrative proceedings. Instead, lodging a complaint with the MCHR is a sort of "right of first refusal" in that it gives the MCHR the right, if it believes the allegations are supported by probable cause, to rectify the complaint through informal means, § 213.075.3, or by prosecuting the claim in its own name in a proceeding before the MCHR, § 213.075.5, or, if either party requests, in a proceeding in circuit court, §213.076. These options exist only for 180 days, however, after which the MCHR must issue a right to sue letter if requested, clearing the employee's way to bring the claim in his or her own name in circuit court. § 213.111.

the MCHR's authority under the MHRA.[10]  But, if the MCHR has jurisdiction, it ***must***

"promptly investigate the complaint" to determine if probable cause exists.  § 213.075.3.

This obligation to investigate promptly cannot delay the employee forever, however,

because the employee is entitled to a right to sue letter (if requested) after 180 days

whether the MCHR has concluded its investigation or not.  § 213.111.

Under these applicable statutes, therefore, the MCHR's decision to dismiss

Swoboda's claim for lack of jurisdiction was not "authorized by law" for purposes of

article V, section 18, if Swoboda's complaint properly invoked the MHRA and the

MCHR's authority under that act. [11]  By the same token, if Swoboda's complaint properly

invoked the MHRA and the MCHR's authority, the MCHR's decision to dismiss his

claim for lack of jurisdiction was both "unlawful" and an "abuse of discretion" under

section 536.150.  *See Curtis v. Mo. Democratic Party*, 548 S.W.3d 909, 914 (Mo. banc

2018) (holding an abuse of discretion occurs when an agency "misapplies the applicable

statutes").

---

[10]   Section 213.075.1 states: "The commission shall make a determination as to its jurisdiction with respect to all complaints[,]" and 8 C.S.R. 60-2.025(7)(B)3 provides the executive director or a designee may, at any time prior to the setting of a public hearing, administratively close a complaint "[f]or lack of jurisdiction[.]"  Jurisdiction, as relevant to administrative agencies, refers to statutory authority to take certain actions. *Cass Cnty. v. Dir. of Revenue*, 550 S.W.3d 70, 74 (Mo. banc 2018).  This Court has implicitly recognized that, if a claim is not cognizable under the MHRA, the MCHR lacks power to investigate the claim. *Cf. Lampley*, 570 S.W.3d at 25-26 (holding the MHRA prohibited the conduct at issue; therefore, the MCHR had statutory authority to investigate the claims).

[11]   This Court reviews agency determinations of law *de novo* to determine whether the agency's decision was "authorized by law." *See, e.g.*, *Ferry v. Bd. of Educ. of Jefferson City Pub. Sch. Dist.*, 641 S.W.3d 203, 206 (Mo. banc 2022); *Fischer v. Dir. of Revenue*, 483 S.W.3d 858, 860 (Mo. banc 2016) ("In determining whether the decision is 'authorized by law,' the [Administrative Hearing Commission's] construction of a revenue statute is reviewed *de novo*.").

In February 2019, Swoboda brought a charge of discrimination against his employer, the Kansas City Police Department ("KCPD"), and Armstrong Teasdale, LLC, a law firm retained to represent his employer in a separate case. Swoboda alleged KCPD retaliated against him for supporting a fellow officer who asserted a charge of discrimination against KCPD. Swoboda also alleged Armstrong Teasdale aided and abetted KCPD's retaliation by telling Swoboda to think about his career before he testified at the deposition.

In March 2019, the MCHR dismissed Swoboda's claim against Armstrong Teasdale on the basis that it lacked jurisdiction because Swoboda did not allege he had an employer-employee relationship with Armstrong Teasdale. In August 2019 – more than 180 days after Swoboda filed his charge of discrimination – Swoboda requested a right-to-sue letter for his complaint against KCPD, which was his only remaining charge of discrimination. The MCHR issued a right-to-sue letter in regard to his charge against KCPD. Accordingly, the only issue presented for judicial review under the constitution or section 536.150 is whether the MHRA requires Swoboda to have an employer-employee relationship with Armstrong Teasdale to have a cognizable MHRA claim against the firm. If it does, the MCHR properly dismissed the claim. If it does not, the administrative decision was "unlawful" and an "abuse of discretion" under section 536.150, and Swoboda is entitled to relief.

Section 213.070.1[12] provides, in pertinent part:

---

[12] All references to 213.070 are to RSMo Supp. 2018.

1. It shall be an unlawful discriminatory practice for an employer, employment agency, labor organization, or place of public accommodation:
(1) To aid, abet, incite, compel, or coerce the commission of acts prohibited under this chapter or to attempt to do so;
(2) To retaliate or discriminate in any manner against any other person because such person has opposed any practice prohibited by this chapter or because such person has filed a complaint, testified, assisted, or participated in any manner in any investigation, proceeding or hearing conducted pursuant to this chapter[.]

Section 213.010(8) defines an "employer" as "a person engaged in an industry affecting commerce who has six or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year[.]"

Armstrong Teasdale concedes it is an employer as defined in section 213.010(8). That should end this case in Swoboda's favor because the MHRA requires nothing more. But the MCHR and Armstrong Teasdale argue that section 213.070.1 applies only to employers who have an employment relationship with the employee asserting the claim. That may be a reasonable limitation and sound public policy, but it is an absolute gutter ball in terms of statutory construction. There is not one word or phrase in section 213.070.1 or elsewhere that imposes (or even suggests) this limitation. Instead, section 213.070.1 states that it is unlawful for "***an employer*** … to ***aid, abet***, incite, compel, or coerce the commission of acts prohibited under this chapter or to attempt to do so," and Armstrong Teasdale concedes it is an "employer" as that term is defined in the MHRA. Nothing in section 213.070.1 or the definition of "employer" requires the employer to be "the employee's employer." Essentially, the MCHR and Armstrong Teasdale ask this Court to add language to section 213.070.1 to reach what they claim the legislature intended or should have intended. This Court, however, ascertains the intent of the

21

legislature from the language ***actually used*** in the statute and will not add language under the guise of construction. *Treasurer of Mo. v. Parker*, 622 S.W.3d 178, 181 (Mo. banc 2021).

Resorting to arguments outside the plain language of the statutes is improper when, as here, the text plainly refutes the MCHR's arguments and supports Swoboda's. Even if it were otherwise, however, the balance tips decidedly Swoboda's way. Reading section 213.070.1 (somehow) to apply only to employers with an employment relationship with the claimant employee contradicts the prohibition against aiding or abetting because an employer cannot aid or abet itself. Armstrong Teasdale and the MCHR attempt to argue around this anomaly by focusing on the fact section 213.070.1 also allows aiding and abetting claims against an "employment agency, labor organization, or place of public accommodation." But that argument does not remove "employer" from the statute with respect to aiding and abetting claims and, instead, simply highlights that the General Assembly did not intend to require an employment relationship to bring such claims.

Armstrong Teasdale and the MCHR also contend the 2017 amendments to the MHRA show the General Assembly intended to limit the applicability of section 213.070 to employers with an employment relationship with the claimant. Prior to 2017, section 213.070.1, RSMo 2016, stated only that it "shall be an unlawful discriminatory practice" to retaliate or aid and abet acts prohibited by the MHRA. Seemingly, this would permit aiding, abetting or retaliation claims to be brought against anyone. In the 2017 amendments, section 213.070.1 was limited such that it was an "unlawful discriminatory

22

practice" only if the aiding, abetting or retaliation was by "an employer, employment agency, labor organization, or place of public accommodation[.]" As a result, the 2017 amendments to section 213.070.1 protected entities who did not qualify as an "employer, employment agency, labor organization, or place of public accommodation[,]" but they did not protect entities that do qualify as one of these. Accordingly, because Armstrong Teasdale concedes it is an "employer" as defined in the MHRA, the 2017 amendments did not protect it and certainly do not provide any basis for reading further limitations into section 213.070 beyond those set forth in the plain language of that statute.

## CONCLUSION

The principal opinion places undue significance on the label of the pleading Swoboda used to initiate judicial review under section 536.150. In doing so, the principal opinion imports barriers to review that were judicially created in other contexts but are not incorporated by the plain language of section 536.150. Instead, section 536.150 authorizes the same six-factor judicial review regardless of the name of the pleading used to initiate that review. This conclusion is compelled by the plain language of the statute but, even if it were not, no other conclusion is possible given the context in which section 536.150 was enacted and the constitutional mandate for judicial review of administrative decisions found in article V, section 18. Applying the standards for judicial review set out in section 536.150, the MCHR's decision to dismiss Swoboda's complaint for lack of jurisdiction was "unlawful" and an "abuse of discretion" and the circuit court was correct in granting Swoboda relief. Because the principal opinion refuses to give Swoboda the

23

judicial review to which he is entitled under section 536.150 and because it apparently would not grant relief if it did, I respectfully dissent.

_____

Paul C. Wilson, Chief Justice

24